Gardiner, Ch. J.
 

 The language of the condition of the policy in question, so far as it is applicable to the case before us, is “ that in case the premises insured shall be
 
 appropriated, applied to or used for the purpose,
 
 either of
 
 storing
 
 or
 
 keeping
 
 therein any of the articles, goods, &c., denominated hazardous, &c., then, from thenceforth, so long as the same shall be so appropriated, applied, or used, these presents shall be of no force or effect.” It is not enough, according to this phraseology, that hazardous articles are upon the premises, They must be there for the purpose of being stored or kept; and the premises must be appropriately applied or used to effect that purpose. This is the definition that has been settled by repeated decisions in reference to the word “storingand there is no reason why it should not be applied
 
 *554
 
 to “ keeping,” a word of more extensive signification undoubtedly, but which, in this connection, seems to demand a continued occupation of the whole, or a part of the premises insured, in pursuance of a design for that specified purpose. Thus, the storing of gunpowder, implies the user of the. premises for that purpose, and such a condition would not be violated by keeping that article for sale at retail. But such a “ keeping” would be a breach of the condition of this policy, because it would require a continued user of some part of the premises to effect that pur-, pose. But if the insured, on his return from hunting, should leave his flask, containing powder, in a desk in a building covered by the policy, for an hour, or á day, this would not be within the prohibition, for the act would not involve the notion of the appropriation, application or user of the premises for the purpose of storing, or keeping gunpowder. The counsel for the appellant was probably right in his suggestion, that the word keeping was introduced into these policies after the decisions in 1
 
 Hall,
 
 226, and other cases w.hich restricted the term “ storing” to its ordinary commercial meaning. The alteration was designed to reach a class of cases where hazardous goods were kept for retail, or other purposes, which presupposed a continued deposit, and which were excluded from the condition by the construction. given by the courts to the policies in the cases mentioned. But it is not to be presumed that the company in this case intended by a formal condition to prohibit the insured from bringing a match upon the premises for the purpose of lighting a' fire, or a bottle of oil to apply to the machinery, although both might remain in the building for a brief period, and although if might be. said that in the broadest sense of the term that both- were
 
 kept
 
 upon the premises, while they remained there. There is a manifest distinction between a deposit of hazardous goods, and a deposit for the purpose of keeping them. A distinction which is recognized by 'the terms of the condition, and which is necessary to prevent the policy from being altogether worthless as an-indemnity, if not a mere imposition on the insured.
 

 This is the only point presented of any importance. It was
 
 *555
 
 raised on the motion to nonsuit and in the request to the iudge for specific instructions to the jury. The charge was in conformity to the views above suggested. The judgment of the supreme court should be affirmed.
 

 Ruggles, Denio, Johnson and Edwards, Js., concurred in the foregoing opinion.
 

 Selden, Parker and Allen, were in favor of reversing the judgment.
 

 Judgment affirmed.