## Farmers' and Mechanics' Insurance Company *versus* Simmons *et al.*

Where a party amends his pleadings on the trial, the granting or refusal of a continuance, is a matter within the discretion of the judge, and cannot be reviewed in this court.

A draft drawn by a creditor upon his debtor, in favour of a third person, does not make such third person a part owner of the claim; and such person having released the parties from all liability on account of the draft, is a competent witness for the creditor.

A clause in a policy of insurance against fire, which expressly prohibits camphene or friction matches "from being deposited, used, kept, or sold in any building insured, or containing any goods or merchandise insured by this policy, unless by special consent, in writing, on the policy, by the secretary;" and which further provides that "any violation of this prohibition shall render the policy absolutely void;" is not violated by a casual use of camphene or friction matches by the workmen employed in the building, contrary to the orders of the assured.

The use of camphene and friction matches, contemplated in such clause, must be a use by the authority, express or implied, of the assured; a known and permitted use.

If, however, the assured knew, or as prudent men ought to have known, of such use, mere orders to the contrary would not avail them: nothing short of an enforced prohibition would save the policy; and if such use was habitual, the law imputes to the assured knowledge and permission.

ERROR to the District Court of *Philadelphia*.

This was an action of covenant brought by Ovid T. Simmons and William B. Dubois against the Farmers' and Mechanics' Insurance Company, upon a policy of insurance against fire, dated the 12th September 1855, whereby the defendants insured the plaintiffs for the term of one year against loss or damage by fire, to the amount of $3000, on property contained in a brick building used as a steam mill, on the west side of Front street, between Market and Plum streets, in the city of Camden, New Jersey. The property insured was consumed by fire on the 19th May 1856.

The policy contained the following clause:—" Gunpowder, camphene, spirit gas, pine oil, spirituous liquors, or any similar

[Farmers' and Mechanics' Insurance Company *v.* Simmons *et al.*]

inflammable liquid, or lucifer or friction matches, or fireworks, are expressly prohibited from being deposited, used, kept, or sold, in any building insured, or containing any goods or merchandise insured by this policy, unless by special consent, in writing on the policy, from the secretary. Any violation of this prohibition shall render the policy absolutely void."

On the trial of the cause, the plaintiffs offered the policy in evidence, when it was discovered that the declaration set forth a policy dated the 12th September 1856, and the defendants objected that the policy offered in evidence was not the one declared upon. The plaintiffs thereupon moved to amend by changing the date in the *narr.;* which was allowed by the judge, notwithstanding an objection by the defendants. The defendants then moved for a continuance, which was refused.

In the course of the trial, the plaintiffs called one Edward Browning, who, upon his *voir dire,* testified, that he held an order from the plaintiffs upon the defendants for rent due him. The defendants objected to him as incompetent on the ground of interest; whereupon the witness released the parties from all liability on the order. The defendants renewed their objection to the witness; which the judge overruled, and the defendants excepted.

There was evidence that matches were used by the men working in the place insured, and that Dubois, one of the plaintiffs, was in the building in the evening when work was going on. There was also evidence of the use of fluid. The plaintiffs asked the witnesses the following questions:—" What were the orders of plaintiffs as to the use of camphene, fluid, and matches in the building?" The defendants objected to this question; but the judge overruled the objection, and admitted the evidence, and this was the subject of another bill of exceptions.

The court below (SHARSWOOD, P. J.) charged the jury, upon this point, as follows:—" As to the use of matches and camphene, the use contemplated by the condition must be a use by the authority, express or implied, of the insured. What, however, is going on habitually in the premises, the insured *is bound to know;* he cannot be permitted to shut his eyes and not see it. He will be presumed to know. If the plaintiffs knew, or as prudent men ought to know, that these things were used, their orders not to use them, will not help them. This is giving a fair and reasonable interpretation to the terms of the condition. *Use* means known and permitted use. Habitual use will be presumed, unless the insured take measures to enforce the prohibition."

The defendants excepted to this portion of the judge's charge. There was a verdict and judgment for the plaintiffs for $3100; whereupon the defendants removed the cause to this court, and assigned for error:—1. The permission to amend, and refusal of a continuance. 2. The admission of Edward Browning as a wit-

[Farmers' and Mechanics' Insurance Company v. Simmons *et al.*]

ness.   3. The admission of the evidence as to what were plaintiffs' orders in reference to the use of camphene, fluid, and matches in the building.   4. The charge of the court upon the effect of the use proved.

*F. C. Brewster*, for plaintiffs. in error.—The amendment was the substitution of another cause of action : Dunbar v. Jumper, 2 *Yeates* 74.   If otherwise, the refusal of a continuance worked the greatest injustice to the defendants.

Browning was the owner of a part of the claim, at the commencement of the suit, and, therefore, should not have been allowed, by means of a release, to make himself a witness : Gallagher v. Milligan, 3 *Penn. R.* 178 ; Bell v. Smith, 5 *B. & C.* 188.

The question allowed to be put to the witnesses as to plaintiffs' orders in reference to the use of camphene, &c., was clearly against law, because it assumed that if the plaintiffs had given orders not to use, such orders were a compliance with the terms of the policy.   The only question ought to have been—" was there such use ?"   The plaintiffs had full control of the building, and could and ought to have prevented it.   The underwriters meant that there should be no use, because of the risk.

*McMurtrie* and *G. W. Biddle*, for defendants in error.—The amendment was merely the correction of a slip of the pen, and there was no proof of surprise : Faunce v. Lesley, 6 *Barr* 121 ; 2 *Rawle* 213 ; 4 *W. & S.* 141.

Browning was a competent witness : Orphans' Court v. Woodburn, 7 *W. & S.* 162 ; Taylor v. Gitt, 10 *Barr* 430 ; Carter v. Trueman, 7 *Barr* 315 ; Roshing v. Chandler, 3 *Barr* 375 ; Holden v. Winslow, 7 *Harris* 452 ; Blackstock v. Leidy, *Id.* 336 ; Haus v. Palmer, 9 *Harris* 296 ; Beaver v. Beaver, 11 *Harris* 167.

If the use of camphene, &c., was against the will and without the knowledge of the plaintiffs, it was a surreptitious use, and as much insured against as incendiarism : Havelock v. Hancill, 3 *T. R.* 277 ; 2 *Caines* 222 ; Wilcocks v. Union Ins., 2 *Binn.* 579 ; American v. Dunham, 15 *Wend.* 9 ; Dobson v. Southby, 1 *Mood. & Malk.* 90 ; Shaw v. Roberts, 6 *A. & E.* 75 ; 31 *Maine* 224 ; 5 *Hill* 60.

The opinion of the court was delivered by

Strong, J.—It is so apparent from the whole declaration, that the amendment which the court below allowed was that of mere clerical mistake of the pleader, and that it was not intended to substitute a different cause of action, that we cannot doubt the correctness of the decision which permitted it.   The policy declared upon was averred to be an insurance from the 12th day of September 1856, for one year ; and the fire was alleged to have taken

[Farmers' and Mechanics' Insurance Company *v.* Simmons *et al.*]

place on the 19th of May 1856, within that year. The mistake in the date seems, therefore, to have been one of those errors which the statute of amendments was designed to cure.

And if the amendment was properly allowed, then the refusal to permit a continuance of the cause was a thing discretionary with the court, and the exercise of that discretion cannot be reviewed by us: Tassey *v.* Church, 4 *W. & S.* 141. The defendants below were not entitled to a continuance, unless surprised by the amendment. It does not appear that they even alleged surprise, and if they did, the court only could determine whether the allegation was well founded.

It is difficult to perceive why Edward Browning was not a competent witness for the plaintiffs below. He was their landlord. They were indebted to him, and gave him an order on the defendants for the rent due. The order was not accepted, though notice of it was given to the defendants. Browning held it, when called to testify, and released the defendants from all liability on account of it. It is argued that this showed him to be a part owner of the claim upon the policy, and therefore that he was incompetent. But a simple draft, drawn by a creditor upon his debtor, in favour of a third person, whether accepted or not, does not make such third person a part owner of the creditor's claim, either in law or equity. It is not even in equity a partial assignment of the claim, unless it be drawn upon the particular fund in the debtor's hands, or unless the draft designates the claim out of which payment is to be made: Mrs. Greenfield's Estate, 12 *Harris* 240. The order in favour of Browning was not drawn upon the debt alleged to be due from the insurance company; it does not appear to have referred to it; it was not even accepted, and consequently it gave to the payee no ownership of the claim either in whole or in part. He stood, therefore, as a mere general creditor of the assured, and was competent.

The sixth and seventh assignments of error raise the only debateable question in the case. They relate to the instruction which the court gave to the jury, respecting the meaning of the policy of insurance. The policy contained this clause: "Gunpowder, camphene, spirit gas, pine oil, spirituous liquors, or any similar inflammable liquid, or lucifer or friction matches, or fireworks, are expressly prohibited from being deposited, used, kept, or sold in any building insured, or containing any goods or merchandise insured by this policy, unless by special consent in writing on the policy from the secretary. Any violation of this prohibition shall render the policy absolutely void." Upon the trial some evidence was given that friction matches had been used to some extent, by the workmen employed in the building, contrary to the orders of the plaintiff, the assured. The court below instructed the jury in substance, that the use of matches and camphene contemplated in that

condition of the policy above quoted, must be a use by the author-' ity, express or implied, of the insured; that what was going on habitually in the premises they were bound to know, and would be presumed to know; that if they knew, or as prudent men ought to have known, that these things were used, then their order not to use them would not help them; that use meant known and permitted use, and that habitual use would be presumed to be known and permitted, unless the insured took measures to enforce the prohibition.

Was this a correct construction of the contract of the parties? We think it was. It is undoubtedly true, that in a fire policy, no less than in a marine one, compliance with an absolute promise in the policy in reference to the risk, is necessary, to hold the insurers to their liability. It is also true, that express warranties must be strictly complied with; yet the construction of the language employed is determined by usage and common acceptation: Bean v. Stupart, 1 *Douglas* 10. In Glen v. Lewis, 20 *Eng. Law & Eq.* 364, where it was stipulated in the policy that if there should be used on the premises insured any steam-engine, stove, &c., the policy should be void, Baron Parke observes, that these conditions are to be construed fairly between the parties, and their meaning be ascertained by adopting the ordinary rules of construction. In New York Equitable Insurance Co. v. Langdon, the policy contained the stipulation that if the building insured should be used for storing therein hazardous or extra hazardous goods, the policy should be of no effect. Among the memorandum articles classed as hazardous, were oil and spirituous liquors. These articles had been kept in quantity in the cellar of the building; and from the casks there stored, smaller vessels had been replenished for a retail trade. Such use, keeping or storage, was held not to be a violation of the condition. Under a similar policy, keeping spirituous liquors in the building insured, in quantity sufficient for the boarders in the house, was held in Rafferty v. New Brunswick Fire Insurance Co., 3 *Harrison* 480, not to be a breach of the condition. So, in 29 *Maine* 97, where cotton in bales was among the articles enumerated hazardous, keeping a sufficient quantity for sale was ruled not to forfeit a policy upon a stock of goods in a store. So, having upon the premises the prohibited article, for the purpose of making repairs, as oil and spirits of turpentine, for painting, 3 *Com. B.* 123, or tar, burned in the building for tarring it, 1 *Moody & Malk.* 90, does not avoid the policy. These cases, it is true, are constructions of a prohibition against keeping or storing the hazardous articles in the insured property, but they all assert the doctrine that the words of the condition or warranty are to be construed according to common usage and popular acceptation. What, then, must the parties have understood as the thing prohibited by the policy now before us? Not the use of a friction match in the building containing the goods

[Farmers' and Mechanics' Insurance Company *v*. Simmons *et al.*]

insured, for that was precisely one of the perils insured against, namely, the use of matches by an incendiary. And if simple use of matches was fatal to the policy, then it might have been avoided by the act of the secretary of the underwriters himself, if he had gone upon the premises and used a match thereon. Surely, it should not be claimed that this was the intention of the contracting parties. If, then, mere use of matches was not the thing against which they stipulated, it would seem to follow that it was use permitted by the assured, and such was the instruction to the jury. They were told that the use contemplated by the condition was one by the authority express or implied of the insured; that if the plaintiffs knew, or as prudent men ought to have known, that matches were used, mere orders would not help them,—nothing short of an enforced prohibition would answer, and that if the use was habitual, the law imputed to the assured knowledge and permission. This was the tenor of the charge, and we think it correct. In Dobson *v*. Southby, 1 *Moody & Malk*. 90, where it was stipulated in the policy that "no fire was kept, and no hazardous goods were deposited" on the premises, and the loss had happened in consequence of making a fire thereon, and burning a tar-barrel, for the purpose of repairs, Lord TENTERDEN said, "I think that the condition must be understood as forbidding only the habitual use of fire, or the ordinary deposit of hazardous goods, not their occasional introduction, as in this case, for a temporary purpose connected with the occupation of the premises." This is certainly going quite as far as the court below have gone in this case, now before us.

Such being, in our opinion, the true construction of the condition, it is quite apparent that it was material for the plaintiffs below to show that the use of matches and camphene in the building, if any there had been, was not permissive, but had been prohibited by them. The question to the witnesses, what were the orders as to the use of camphene, fluid and matches, in that building, was therefore properly allowed.

.            Judgment affirmed.