CLUTE and another, Respondents, vs. CLINTONVILLE MUTUAL FIRE INSURANCE COMPANY and others, Appellants.

*January 11—January 31, 1911.*

(1, 5) *Appeal: Review: Estoppel: Bill of exceptions.* (2–7) *Fire insurance: Gasoline clause: Violation: Instructions to jury: Total or partial loss: Pleading: Amendment to conform to proof: Ownership of property: Evidence.*

1. A party who requests the submission of a question to the jury cannot on appeal assign such submission as error.
2. Evidence that one of the owners of a factory insured under a policy which by its terms became void if gasoline was kept, allowed, or used on the premises without consent, ordered five gallons of gasoline not intended for use in the factory or to be kept therein, but failed to direct where it should be sent, and that it was delivered at the factory while he was out, but on his return a few minutes later was set outside, where it remained about an hour until he went home at night, when he took it with him, does not show a violation of the policy.

3. In an action upon such policy instructions to the jury that the words "kept or allowed" did not refer to the temporary presence of gasoline on the premises; that they meant something more than a mere casual taking of gasoline on the premises and removing it soon after; and that the burden of proof was on the defendant to show by the preponderance of the evidence "that the plaintiff exposed the property to the additional hazard of habitually keeping gasoline on the premises for a considerable time," before they could find the condition violated, were not erroneous as applied to the facts.

4. Although there was some evidence from which the jury might have inferred that the fire was caused by an explosion of gasoline vapor, yet, there being no other evidence of gasoline being brought to or removed from the premises, such instructions were thereby not rendered misleading.

5. Where error is assigned upon the charge of the court, if the whole charge is not made a part of the record the bill of exceptions should affirmatively show that it does include the whole charge on the subject matter covered by the exception.

6. Property was insured in several companies, and after a fire there was a dispute as to whether or not the loss was total. The assured finally agreed to allow a certain amount as salvage provided the insurance companies would pay in cash, which several of them did, and proofs of loss were made and forwarded to all the companies on that basis. In an action against the companies which did not settle, the complaint claimed damages on the basis of such proofs, but the uncontradicted evidence on the trial showed a total loss, and the jury rendered a verdict accordingly. *Held* that, in the absence of any showing that defendants were misled or placed at any disadvantage by the averments of the complaint, it was within the sound discretion of the court to allow the same to be amended to conform to the proof.

7. Where insured property destroyed by fire was nearly all received by the assured from one company which was claimed by the insurance companies to be the real owner, statements made by such company to a bank prior to the fire as to the amount of its accounts receivable, offered in evidence to prove such ownership, were properly excluded, especially where such statements were not itemized and there was no proof that they did not include, and it was possible they did include, the amount which the assured admitted that they owed such company, and no other testimony as to ownership was offered in connection therewith.

APPEAL from a judgment of the circuit court for Winnebago county: Geo. W. Burnell, Circuit Judge. *Affirmed.*

This action was brought to recover for fire loss under policies of insurance issued by the defendant companies to the plaintiffs. In the answers interposed liability was denied on various grounds. So far as it is necessary to consider these defenses on this appeal they were: (1) Plaintiffs were guilty of fraud and false swearing in making their proofs of loss, in that they represented the value of the property insured to be $6,400, when in fact it did not exceed $600. (2) They represented themselves to be the owners of the property and that it was not incumbered, when in fact they did not own it. (3) Plaintiffs violated a provision contained in each of the policies by keeping and storing gasoline on the premises, and thereby forfeited their right to recover. (4) Fraudulent representations were made in the applications for insurance, both as to the ownership and the value of the insured property. There was a verdict and judgment for the plaintiffs, and from this judgment defendants appeal.

For the appellants there was a brief by *Phillips & Hicks,* attorneys, and *N. P. Christensen,* of counsel, and oral argument by *M. C. Phillips.*

For the respondents there was a brief by *Churchill, Bennett & Churchill,* attorneys, and *Bouck & Hilton,* of counsel, and oral argument by *W. H. Churchill.*

BARNES, J. The evidence was ample to sustain the finding of the jury that the plaintiffs were the owners of the goods destroyed and damaged by the fire, and also the finding that the value of the insured property at the time of the fire was $6,729.47. No discussion of the evidence bearing on these points will be indulged in.

By its answer to question 6 of the special verdict the jury found that the plaintiffs did not permit gasoline to be "kept or allowed" on the premises. Each policy provided that it

should be void if gasoline were kept, allowed, or used on the premises without the consent of the insurer being indorsed thereon, and no such consent was given. The testimony in reference to gasoline was to the effect that a week or two before the fire the plaintiff *Clute* ordered five gallons of gasoline, not intended for use in the factory or to be kept therein, without directing where it should be sent, and that it was delivered at the factory while *Mr. Clute* was out; that he returned very shortly thereafter and found the gasoline and instructed one of the employees to set it outside and that it remained outside until *Clute* was going home to supper, when he took it with him. The evidence tended to show that the gasoline was kept in the factory but a very few minutes and that it did not remain outside to exceed an hour before it was taken away. There was testimony also offered on the trial to show that the fire resulted from an explosion, the defendants claiming that the explosion was caused by gasoline and the plaintiffs claiming that it was caused by the accumulation and ignition of coal gas in a coal stove. The appellants contend that the court erred in submitting question 6 to the jury and also in charging the jury in reference thereto. Appellants' counsel requested the submission of this question and are in no position to assert error because their request was complied with. The court instructed the jury that the words "kept or allowed," as used in the policies of insurance, did not "refer to the temporary presence on the premises of gasoline." Furthermore, that the prohibition meant something more than a mere casual taking of gasoline on the premises and removing it soon after. Also that the burden of proof was upon the defendants to show by a fair preponderance of the evidence "that the plaintiff exposed the property insured to the additional hazard of habitually keeping gasoline upon the premises for a considerable time," before the jury would be warranted in returning an affirmative answer to question 6. If there is any vice in the charge of the court it is found in the

foregoing excerpts, although they embody but a small portion of the charge to which exception is taken. That the instructions given were correct in the abstract is very generally held. *Mears v. Humboldt Ins. Co.* 92 Pa. St. 15; *Smith v. German Ins. Co.* 107 Mich. 270, 65 N. W. 236; *Hynds v. Schenectady Co. Mut. Ins. Co.* 11 N. Y. 554; *Williams v. Firemen's Fund Ins. Co.* 54 N. Y. 569; *First Cong. Church v. Holyoke Mut. F. Ins. Co.* 158 Mass. 475, 478, 479, 33 N. E. 572; *Williams v. New England Mut. F. Ins. Co.* 31 Me. 219; *Maryland F. Ins. Co. v. Whiteford,* 31 Md. 219; *Springfield F. & M. Ins. Co. v. Wade,* 95 Tex. 598, 68 S. W. 977, 58 L. R. A. 714; *Phœnix Ins. Co. v. Flemming,* 65 Ark. 54, 44 S. W. 464, 39 L. R. A. 789; *Szymkus v. Eureka F. & M. Ins. Co.* 114 Ill. App. 401; *Thompson v. Equity F. Ins. Co.* 17 Ont. L. Rep. 214. Many additional cases will be found cited in the notes to the last case as reported in 13 Am. & Eng. Ann. Cases, 532. The instructions as applied to the facts in the case before us were not erroneous. They were evidently framed to meet the testimony offered as to the circumstances under which gasoline was brought to the premises in the first instance and as to the length of time it remained, and we think were so understood by the jury. The court might well have instructed the jury that if this testimony were found to be true the provision of the policy was not violated.

There was some evidence offered in behalf of the defendants from which the jury might have inferred that the fire was caused by an explosion of gasoline vapor, and it is argued that the jury might have interpreted the instructions given as meaning that there was no violation of the policies even though the gasoline was permitted to remain on the premises from the time it was delivered until the fire occurred. We are not called upon to decide whether the instructions would be erroneous if they were as broad as counsel claim they were. As before stated, we think the instructions would be understood by the jury as applying to *Clute's* testimony and to that

of the witnesses who corroborated him. There was no other evidence to the effect that gasoline had been taken to or removed from the premises. If it be assumed that the explosion was caused by gasoline, there is no evidence to show when the gasoline was brought on the premises or how long it remained there. We are entirely unable to agree with appellants' contention that it is a verity in the case that the fire was caused by an explosion of gasoline. As we read the evidence it preponderates the other way.

Only those portions of the charge that are excepted to are preserved in the bill of exceptions, and it is argued by respondent that under *James v. State,* 124 Wis. 130, 133, 102 N. W. 320, and *Grabowski v. State,* 126 Wis. 447, 456, 105 N. W. 805, this court cannot review any part of the charge because the whole is not incorporated in the bill of exceptions. The cases do not go to the extent claimed. It may often happen that, while a charge is lengthy, exception is taken to only one or two legal propositions therein contained and it may be unnecessary to incorporate the entire charge in the bill. But this court is entitled to know whether anything is said elsewhere in a charge which may cure an erroneous statement, and is entitled to have all of the charge before it that is germane to the part excepted to and which might tend to qualify or explain it; and where the whole charge is not made a part of the record the bill of exceptions should affirmatively show that it does include the whole charge on the subject matter covered by the exception.

Three other insurance companies also carried insurance on the property damaged and destroyed, to the amount of $2,500 in the aggregate. A Mr. Casper represented these companies in the adjustment of the loss. A Mr. Haessly represented the defendant mutual insurance companies. The value of the insured property seems to have been agreed upon between the parties, or at least some of them, but there was some disagreement as to whether there was any salvage on the property, and,

if so, how much.    The amount of salvage was finally agreed upon as being $976.25.    Mr. Haessly testified that the plaintiffs figured that they ought to have a total loss; that they finally agreed that they would accept these figures, provided the insurance companies would pay in cash, but they wanted a total loss.    Proofs of loss were made on the basis of the adjustment and sent to all the companies.    What disposition of the loss was made by the three stock companies does not appear, and it is immaterial, as they are not defendants in this action.    In the complaint in the action, damages were claimed on the basis of the proofs of loss which were furnished to the defendants.    On the trial evidence was introduced, apparently without objection, to show that the loss was total, and such evidence was practically uncontradicted.    The jury found that the loss was total and assessed the plaintiffs' damages accordingly.    After verdict was returned the plaintiffs moved to amend their complaint so as to conform to the proofs, and such amendment was allowed.    The ruling of the court in this regard is assigned as error.    There was no showing made by the defendants, in opposition to the motion, to the effect that they relied on the statements contained in the proofs of loss or on the allegations contained in the complaint in reference to the damage which the plaintiffs sustained and that because of such reliance they were unprepared to offer and did not offer any testimony in reference to the amount of the salvage.    In fact they claimed that the entire stock insured was worth only a few hundred dollars.    In the absence of any showing that the defendants were misled or placed at any disadvantage by reason of the averments of the complaint in reference to the amount of damage sustained, it was within the sound discretion of the trial court to permit the amendment.    *Williams v. Arnold,* 139 Wis. 177, 180, 120 N. W. 824; *Bieri v. Fonger,* 139 Wis. 150, 154, 120 N. W. 862, and cases cited.

It is further urged that the insured stock of goods belonged

to the Wiens Brush Company and that the plaintiffs were not
the sole and unconditional owners of the property and in fact
had no insurable interest therein, and that therefore no re-.
covery could be had upon the policies of insurance.   We are
unable to find any evidence which supports this contention.
There may be some facts established which tend to create a
suspicion as to the ownership, but this is the extent to which
the evidence goes.   The stock of goods in question was almost
entirely purchased from the Wiens Brush Company by the
plaintiffs, and the defendants offered a statement made by the
Wiens Brush Company to the bank with which it was doing
business, under date of January 2, 1908, which statement
showed the aggregate amount of accounts receivable at that
time.   They also offered another statement made to the same
bank showing the aggregate amount of accounts receivable
which such company claimed to own on December 31, 1908.
Both of these exhibits were rejected and error is assigned be-
cause they were not received in evidence.   The statement of
January 2, 1908, showed the amount of accounts receivable to
be $4,670.82.   The statement of December 31, 1908, showed
the amount of such accounts to be $5,187.21.   The sale to the
plaintiffs was made during the year 1908 and was made
largely on credit.   The amount due to the Wiens Brush Com-
pany on December 31, 1908, on account of this sale, was ap-
proximately $3,613.88.   No error was committed in exclud-
ing the exhibits, if for no other reason than because they did
not tend to prove anything.   The accounts receivable were
not itemized.   The statement of December 31st might well
have included the account against the plaintiffs.   Certainly,
in the absence of any testimony showing that it was not in-
cluded, no inference could be drawn to the effect that it was
omitted.   The statement might have been competent evidence
in connection with other testimony in reference to ownership,
but no other testimony was offered.   There being nothing in
the statements that tended to contradict or put in issue the di

rect and positive testimony of the plaintiffs that they were the owners of the stock of goods, the statements were wholly immaterial.

Some other errors are assigned. They have been examined and found to be without merit and we deem it unnecessary to discuss them in detail.

*By the Court.*——Judgment affirmed.