**STATE of Maine**

v.

**Timothy W. BURNS.**

Supreme Judicial Court of Maine.

June 12, 1973.

Donald H. Marden, Asst. County Atty., Augusta, for plaintiff.

Tom Brand, Limington, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

This case comes to us on appeal from a conviction for possession of marijuana. Jury trial was waived below. The single issue presented for our consideration is whether defendant's motion to suppress certain evidence was properly denied. We hold that the motion to suppress should have been granted in part and denied in part, and that the judgment must be set aside since we cannot determine from the record whether or not the Justice below may have relied upon inadmissible evidence.

On March 23, 1972 Captain Welsh of the Augusta police department obtained a valid warrant to conduct a search of the premises of Capitol Billiards, Inc., a business establishment in Augusta.[1] The events surrounding the execution of the search warrant were described by Welsh, sole witness at the hearing below on the motion. At approximately 7:20 P.M. on March 23rd Welsh, accompanied by a number of officers, conducted a "raid" at the billiard parlor. Welsh entered through the front, or south, door and immediately notified the 28 persons present that a search was about to be conducted. He directed everyone present to move up against the west wall.[2] Running down the center of the billiard parlor were three pool tables. Midway along the east wall, on Welsh's right, were some low benches. At the rear, or north, end of the room were pinball machines and

1. The warrant was properly issued on the basis of an affidavit furnished by Captain Welsh and based upon information supplied by an unnamed informer shown to be reliable. It authorized search of the premises for "illicit drugs, namely LSD–25 (d-Lysergic acid diethylamide), amphetamines or derivatives or compounds, thereof, barbituates, or any other salts, derivatives or compounds thereof, Cannabis, (marijuana) and hypodermic needles

and syringes and other paraphernalia * * *."

2. At some point in the proceedings ages were checked and an undisclosed number of juveniles and females were directed to move up against the east wall under the supervision of two police matrons who were in attendance. This fact has no bearing on the result.

about fourteen feet from those machines, in the northeast corner, stood a cigarette vending machine. When the police entered, the defendant, who was known and recognized by Captain Welsh, was standing with two or three other persons midway between the pinball machines and the cigarette machine. Another group of people stood between Welsh and the defendant near the benches. As the occupants of the room complied with the order to move to the west wall, a process consuming about three minutes, Welsh proceeded down the east side of the room. He then observed three clear plastic bags containing a grassy material, two lying on the benches and one on the floor beside a bench. As he continued further, he observed two similar bags protruding from a slot in the cigarette machine. At this point Welsh placed all 28 persons in the pool hall under arrest for knowingly being present where marijuana was kept.[3] Pursuant to this arrest searches were conducted of all 28 individuals. The search of defendant produced from his pants pocket a clear plastic bag containing a small amount of grassy material. After the mass arrest had taken place, Welsh noticed a denim jacket lying on one of the pinball machines. Protruding from the pocket of this jacket, in plain view, were several clear plastic bags containing a grassy material. The jacket was seized and an inventory search of the contents of the jacket pocket produced, in addition to the bags of marijuana, a small prescription vial with defendant's name typed across it. The defendant was subsequently arrested upon a new charge of possession.

At the defendant's trial for possession of marijuana,[4] the State offered in evidence, and the defendant moved to suppress, the marijuana taken from the defendant's pants pocket, the marijuana found in the jacket pocket, the vial and the jacket. After a ruling was made by the Court denying the motion in toto, the defendant stipulated that the vial did belong to him and that the material contained in the plastic bags was indeed marijuana. The State offered no further evidence and rested its case. The defendant offered no evidence and was adjudged guilty by the Justice below.

■ We hold that the Court below erred in failing to grant defendant's motion to suppress the marijuana taken from defendant's person. The search warrant plays no significant role here since it was at most a warrant to search the premises and not a warrant to search the clothing of customers who might happen to be on the premises at the time of the search. The search of defendant's pants pocket could be justified only if it occurred as incident to a lawful arrest. Indeed, it is precisely on this ground that the State seeks to justify that particular search. In the instant case we have an unusual situation in that the defendant was twice arrested within a short time and we must inquire whether or not the search could be justified as incident to *either* arrest. Here the search of the pants pocket *followed* an arrest for knowingly being present where marijuana was kept or deposited, but *preceded* an arrest substantially contemporaneous therewith for possession.

■ We need not concern ourselves with the fact that the offenses charged by the officer as the basis of arrest were both misdemeanors.[5] The Legislature has en-

---

3. 22 M.R.S.A., Sec. 2383(2) as amended provides: "Whoever, knowingly, is present where Cannabis, * * * is kept or deposited, or whoever is in the company of a person, knowing that said person is in possession of Cannabis, * * * shall be punished * * *."

4. This was an appeal to the Superior Court from the District Court on a charge of violation of 22 M.R.S.A., Sec. 2383(1) —possession of Cannabis.

5. In State v. Stone (1972–Me.) 294 A.2d 683, 690, 691 we were at some pains to point out the limitations on warrantless

acted a special statutory provision which has application here. 22 M.R.S.A., Sec. 2383(3) enacted by P.L.1970, Ch. 568 provides:

"Any sheriff, deputy sheriff, municipal or state police officer, if he has probable cause to believe that a violation of this section (dealing with, inter alia, possession and being present where marijuana is kept) has taken place or is taking place, may arrest without a warrant, any person for violation of this section *whether or not that violation was committed in his presence.*" (Emphasis ours)

For our purposes, then, the law applicable to probable cause *felony* arrests and searches incident thereto is applicable here, this being the practical effect of the quoted statute.

■ In considering whether probable cause existed to justify the search of defendant's person, we must look only at the information known to the police officers prior thereto. "A search that is substantially contemporaneous with arrest may precede the arrest, so long as there is *probable cause to arrest* at the outset of the search." (Emphasis ours). People v. Marshall (1968) 69 Cal.2d 51, 69 Cal.Rptr. 585, 591, 442 P.2d 665, 671; United States v. Collins (1971) 142 U.S.App.D.C. 100, 439 F.2d 610, 614; Harlan, J. concurring in Sibron v. State of New York (1968) 392 U.S. 40, 77, 88 S.Ct. 1889, 1909, 20 L. Ed.2d 917.[6]

It is clear from the record that at the time of the search of defendant's person the denim jacket had not yet been inventoried, and thus, at this point in time, no evidence had been uncovered which in any way linked the jacket pocket marijuana to the defendant. There was therefore no probable cause then existing to arrest the

defendant *for possession.* Prior to the search of defendant's person, the officers knew only that several bags of material which they rightly assumed was marijuana were strewn about the billiard parlor in plain view. There is no indication that these bags were exposed to the view of the customers prior to the sudden entry of the police. It is at least probable that the unknown owners of the bags discarded them hastily when the police entered in order to divest themselves of any incriminating evidence. We are satisfied that there then existed no sufficient basis for a reasoned belief by the officers, measuring up to the probable cause standard, that any single designated patron among so many had "known" of the presence of marijuana prior to the entry of the police and the simultaneous restriction on the freedom of movement of those in the hall. There was certainly reason to believe that at least a few of the patrons of the billiard parlor had been in possession of marijuana, perhaps secretly, prior to the entry of the police but this did not justify the mass arrest of the 28 persons present, including the defendant.

■ Thus far we have emphasized the requirement of *knowledge* on the part of the defendant with respect to the offense for which he was first arrested. We have not heretofore had occasion to construe the words "kept or deposited," as used in Sec. 2383(2). In Bouchard v. Dirigo Mutual Fire Ins. Co. (1915) 113 Me. 17, 92 A. 899 our Court interpreted the words "kept or used" in a fire insurance policy prohibiting the keeping or using of certain articles on the insured premises. In that case it was held that the word "kept" contemplates more than mere temporary presence. We are satisfied that at the very least the words "kept or deposited" as used in this statute import a more extended presence

---

searches and seizures in the ordinary misdemeanor situation, which are nevertheless permitted even though a lawful warrantless arrest must be for a misdemeanor committed in the presence of the officer.

6. Mr. Justice Harlan said, "Of course, the fruits of a search may not be used to justify an arrest to which it is incident, but this means only that probable cause to arrest must precede the search."

on the premises than would be provided when a customer merely brings the contraband onto the premises for his own purposes, retaining possession of it when he leaves. In the instant case it would be unreasonable to suppose that the five bags of marijuana had been "kept or deposited" by anyone for any appreciable time in the unlikely places in which they were first observed.[7]

We conclude that there was no probable cause for the first arrest of defendant and the search of defendant's person incidental thereto was illegal. It was therefore error to admit in evidence over objection the results of that search.

■ Although the search of the defendant's person was unlawful, the seizure of the jacket and the marijuana and vial in the pocket thereof was lawful and those items were ·properly admitted at trial. Welsh first observed the jacket marijuana, *in plain view*, while he stood in an area freely open to the public. He would have had a perfect right to be where he was at the time even if he had not had a valid search warrant. The subsequent inventory examination of the jacket produced evidence inferentially constituting indicia of ownership and possession of the jacket and its contents adequate to establish probable cause. On the basis of the evidence in hand, the subsequent rearrest of the defendant on a charge of unlawful possession of the marijuana found in the jacket was justified and lawful.

■ Even though the evidence which we have held admissible in this case might, when viewed in conjunction with defendant's physical proximity to the jacket, have justified a conviction, we are unable to say, beyond a reasonable doubt, whether the judgment below would have been the same, had the marijuana taken from defendant's person not been admitted in evidence.[8] We cannot overlook the fact that the discovery of marijuana on the defendant's person was *direct* evidence of possession whereas, since it was never stipulated that the *jacket* was owned by the defendant, possession of the marijuana in that garment would be proved only if the factfinder first concluded that the presence of the defendant's identifying vial in a jacket lying near where defendant was standing convinced him beyond a reasonable doubt that both the jacket and the marijuana were owned by or at least in the possession of the defendant. We cannot say from this record that evidence of the possession of marijuana taken from defendant's person may not have improperly influenced the Justice below in determining that the marijuana observed in the jacket pocket was in fact possessed by the defendant. Neither can we say with any certainty that the determination of guilt did not rest exclusively upon the inadmissible evidence.

The entry will be

Appeal sustained.

New trial ordered.

All Justices concur.

7. Since the mass arrest was for knowingly being present where marijuana is kept or deposited, we have no occasion here to consider what might have been the result if the charge had been based upon the alternative statutory ground—being in the company of a person, knowing that person to be in possession of marijuana. It suffices to say that mere suspicion as to requisite knowledge will not satisfy the requirement of probable cause.

8. The Justice below made no findings which might· aid us in determining what relative probative weight, if any, he assigned to either (1) the discovery of marijuana on defendant's person, or (2) the discovery of marijuana in the jacket.