## SAWYER et al. v. EQUITABLE ACCIDENT INS. CO. OF CINCINNATI.

*(Circuit Court, E. D. Wisconsin. March 25, 1890.)*

LIFE INSURANCE—APPLICATION—ANSWER BY AGENT.

Insured was not asked as to his income, but after he had signed his application, the statements in which were warranted, the agent, without his knowledge, inserted a statement that it was not less than $100 a week. This statement was in a different handwriting from the rest of the application, and the policy was issued by the home office. *Held*, that the company was liable, though insured was practically insolvent, and his income was much less than $100.

At Law. On motions for judgment on verdict and for new trial.

Action by Edgar P. Sawyer and John N. Kiel, executors of the will of Julius H. Kiel, against the Equitable Accident Insurance Company of Cincinnati, upon a policy of insurance.

*Weisbrod, Thompson & Harshaw*, for plaintiffs.

*Gary & Forward*, for defendant.

JENKINS, J. The action is upon an accident policy of insurance issued by the defendant upon the life of Julius H. Kiel, the plaintiffs' testator, for the sum of $10,000. One of the defenses to the action, and the only one necessary to consider at this time, is that, in the application upon which the policy was based, the assured stated as a fact which he warranted to be true, but which was in fact false, that his weekly income was not less than $100. At the trial the jury returned a general verdict for the plaintiffs, and, in answer to two special questions submitted, found that at the time of the application, and for a year prior thereto, the weekly income of Julius H. Kiel did not exceed $50; but that the statement in the application respecting his weekly income was not contained in the application when signed, nor inserted therein at any time with the knowledge or consent of the assured. Upon this verdict, both parties now move the court for judgment; the defendant coupling therewith a motion for a new trial.

The facts established by the verdict, so far as they are essential to the proper determination of the question involved, may be thus summarized: The assured, a resident of Oshkosh, on the 18th of April, 1888, at Milwaukee, applied to W. H. Craft, the Wisconsin state agent of the defendant, for accident insurance to the amount of $10,000. He was a stranger to Craft, who required references. He informed Craft that he was president and treasurer of the Ingalls, White Rapids & Northern Railroad, a logging railroad in the northern woods, and referred Craft to the office of the Wisconsin Central Railroad. Craft said to him that the agency could not write a policy in excess of $5,000, but he would take his application, and, if the references proved satisfactory, would forward the application to the company with a recommendation that the policy issue. Thereupon Craft's son, in his presence and in the presence of the assured, propounded the questions and wrote the answers in the blank application, so far as the blanks were filled at the time. The application was then signed by Kiel, who left with Craft his check for $50, the required premium, with the understanding that the policy when issued should be forwarded to him at Oshkosh, or, if the application should be rejected, the check was to be returned. At no time was Kiel interrogated as to his income, nor did he make any statement respecting it. Craft, upon inquiry, satisfied himself respecting the desirability of the risk, and, in the absence of Kiel, and without his knowledge or consent, upon the margin of the application, added to the occupation stated by Kiel the word "capitalist," and in the space in the prescribed blank, which had not been filled, erased the printed word " wages," and inserted in writing "income not less than $100.00," so that the statement would read, "my weekly income not less than $100.00," and thereupon forwarded the application to the defendant with a letter strongly recommending the acceptance of the risk. The policy was issued and sent to Craft, who in turn forwarded it to Mr. Kiel by mail, and used the check left with him for the premium. The application was a printed blank furnished by the defendant company to its agents, and contained the usual warranty that the statement of facts therein contained, and upon which the policy was to be based, was true. The company was not informed of the action of Craft in respect to his alteration of the signed application until the last trial of the action, when it timely tendered and paid into court, to the use of the plaintiffs, the amount of premium, with accrued interest to the date of such tender and payment. The alterations were manifestly in the handwriting of Craft, the agent, with which the company must be assumed to have been familiar, and exhibit a marked contrast to the handwriting of the son who filled the blank, with the exceptions stated. The printed instructions to agents required them, in case of application for insurance in excess of $5,000, to apply to the home office, giving full answers to each question in the application, and stating the salary or weekly wages of applicant. Mr. Craft, at the trial, insisted that, in insuring professional men, merchants, and those having no fixed income, it was the custom to ignore that ques-

tion, or to insert such an amount as the agent thought reasonable; but he could not say that any of the general officers of the company had ever so instructed him. The rule of the company at that time was that weekly indemnity from all sources should not exceed weekly wages, and the amount of death benefit, when coupled with weekly benefit, was adjusted upon the basis of weekly indemnity. Mr. Kiel had during the fall previous invested in a logging railroad and logging business that was largely incumbered. The incorporation owning it at the time of this application was insolvent, and on the verge of bankruptcy, to the knowledge of Mr. Kiel. Within a few weeks thereafter the railroad and business passed into the hands of a receiver. Mr. Kiel had some considerable real estate, yielding income, but was indebted to an amount in excess of all his property, and was at the time of this application, to his knowledge, practically insolvent, although still in receipt of rentals. His death occurred soon after, as found by the jury, from accidental drowning. The policy of insurance professes to be issued in consideration of the representations, agreements, and warranties made in the application, and contains an agreement by the assured that such declarations are warranted to be true in all respects; and said application is referred to and made part of the contract, although no copy of the application accompanies the policy. It is also conditioned in the policy that, if any statements in the application are false, the policy shall be void.

The question presented is whether the company is bound when its agent wrongfully changes the application after it is signed, and before its transmission to his principal; the insured being guiltless of participation in the wrong. It was held in *Insurance Co.* v. *Wilkinson*, 13 Wall. 222, that insurance companies acting through agents at a distance from the home office were bound by their acts within the general scope of the business intrusted to them, and that parties dealing with them are not bound by any limitation of authority not brought to their knowledge; that, when such agents prepare the application, and insert therein an untrue statement not given by the applicant, the company is bound, although the application be signed by the assured. The decision of that case was affirmed in *Insurance Co.* v. *Mahone*, 21 Wall. 152, where it was ruled that the proposals and answers prepared by the company's agent must be regarded as the act of the company, which they cannot be permitted to set up as a warranty by the assured when truthful answers were given to, but other and untruthful answers were substituted by, the agent. The court further held that it was of no consequence that the answers as written by the agent were read to and signed by the applicant; that, having answered truly, the applicant had the right to assume, that the answers he did make were accepted as meaning, for the purpose of obtaining a policy, what the agent stated them in writing to be. These cases were followed and approved in *Insurance Co.* v. *Baker*, 94 U. S. 610. There the agent of the company undertook to construe and interpret the answers of the applicant, and inserted in the application his construction and interpretation of the answers, but not the answers themselves. It

was held that the statement, although signed by the applicant, was one prepared by the company, for which it was responsible, and could not be asserted to defeat the policy.

The counsel for the defendant strenuously contests the correctness of the rule thus laid down. They claim it to be in antagonism to settled principles of law: that the signer is conclusively presumed to know the contents of the instrument signed, and that, by signing it, he adopts every erroneous statement therein, and warrants its correctness. They further insist that the signer of an erroneous statement going to the basis of a contract of insurance has by that act fraudulently or negligently colluded with the agent, and become the active participant in an imposition upon the company, to its injury; and that to allow him thus to escape his warranty is to permit him to take advantage of his own wrong. They further insist that the cases cited are substantially overruled by the case of *Insurance Co.* v. *Fletcher*, 117 U. S. 519, 6 Sup. Ct. Rep. 837, and that the latter case presents the only logical principle by which such cases should be ruled, and is authoritative here to effectuate the defense and avoid the policy. Since some of the language of Mr. Justice FIELD in the latter case is said to antagonize the reasoning upon which the previous cases are based, the facts of the latter case should be carefully looked to, to ascertain the precise situation to which the argument is addressed. The printed application contained the usual warranty with respect to the answers, and the further agreement—wanting in the previous cases—that, "as only the officers at the home office had authority to determine whether or not a policy should issue on any application, and as they relied only on the written statements and representations referred to, no statements or representations made or information given to the persons soliciting or taking the application for the policy should be binding on the company, or in any manner affect its rights, unless they were reduced to writing, and presented at the home office in the application." To the policy was attached a copy of the application, with notice to the assured that, if corrections were desired respecting any unintentional errors or omissions in the application, when satisfactory to the company, a certificate to that effect would be issued by the proper officers. The agent falsely stated in the application the answers of the applicant signing the application, there being no evidence, as the court states, that the application was not read by him before he signed it, or that there was any imposition practiced upon him, or that, after receiving the policy, which he retained until death,—a period of over two years,—he applied to correct his answers, which, as written down, were conceded to be false. The opinion distinguishes this case from that of *Insurance Co.* v. *Wilkinson*, and kindred cases, upon the ground that in those cases no limitation upon the power of the agent was brought to the notice of the assured, and asserts that "in such cases it may well be held that the description of the risk, although nominally proceeding from the assured, should be regarded as the act of the company," while in the case then under consideration the power of the agent was expressly limited, and notice thereof embodied in the application which the assured signed, and which he

must be presumed to have read.   So that the false statement in the application was in law the adopted act of the assured, who thereby became, through his own negligence, an instrument and participant in the fraud of the agent, barring the right to assert the validity of a policy thus procured.   The decision proceeds upon the further ground that the retention of the policy with a copy of the application attached was a ratification and approval of the false statements in the application, and of the fraud perpetrated, equally barring any right of recovery.   I find no conflict or want of harmony in these decisions, the peculiar facts of each being considered.   In the *Mahone* and *Baker Cases* the assured made truthful statements to an agent clothed with apparent authority to deal with the subject, and without notice of any limitation of authority.   The answer written by the agent, and signed by the applicant, was the interpretation and legal effect given by the agent to the truthful answers of the applicant.   In such case it may well be said that the agent, being possessed of the facts, might determine for his principal what interpretation should be given to ascertained facts as affecting the subject inquired of.   *Insurance Co.* v. *Chamberlain*, 132 U. S. 304, 312, 10 Sup. Ct. Rep. 87.   In the *Wilkinson Case* the erroneous information came from a third party to the agent, touching a fact of which the applicant was ignorant, and which was accepted by the agent as satisfactory.   With no notice of limitation of the authority of the agent to deal with the matter for his principal, the assured could rightfully assume from such act that the company was content with the information obtained.   In such case the answer was the act of the company by its agent, and not that of the assured.   In the *Fletcher Case*, on the contrary, there was express limitation of authority of the agent.   The assured signed the application with knowledge, or means of knowledge, of such limitation.   If he failed to read the paper signed, that was his own negligence, operative to work a fraud upon the company.   He was prevented by no fraud or deceit of the agent from knowing the limitation of authority, or the statements to the company which he verified by his signature.   He was therefore held to have adopted the acts of the agent in excess of authority as his own, and thereby to have become a participant in the fraud perpetrated upon the principal.   The distinction between the cases is clearly stated by Mr. Justice FIELD, and rests upon notice to the assured of the limitation upon the power of the agent.   I have been thus careful to verify the facts and grounds of decision in *Insurance Co.* v. *Fletcher*, as counsel have insisted that the first paragraph in Mr. Justice FIELD's opinion is in direct antagonism to, and practically overrules, the previous decisions of the court, notwithstanding the distinction between the cases stated in the opinion.   I do not so read the meaning of the paragraph.   Standing alone, the language is, undoubtedly, quite comprehensive; but it would be manifestly unfair to construe it without reference to the facts of the case to which it was addressed.   So interpreted, it is to the effect only that, when assurer and assured have both been deceived by the fraudulent act of the agent, and the assured, from neglect to read the application, when reading would have disclosed both the fraud and the limitation of author-

ity of the agent, was placed in the position of making false representations inducing a contract not otherwise obtainable, justice would require that the contract be canceled, and the premiums returned. So construed, there is no lack of harmony in the line of decisions referred to. It cannot be presumed that the court designed to overrule the doctrine of prior cases which they were careful to distinguish from the case then before it.

Coming now to the case in hand, it is clear that the defense of breach of warranty on the ground of false statement of income must fail, for the plain reason that the assured executed no such warranty. The paper signed was a blank as to that subject. The filling of that blank was subsequent to the signing, and was the act of the agent of the company, and without authority of the assured. He cannot be bound upon a warranty of which he was ignorant. Nor does the case fall within the rule applicable to negotiable and other instruments executed in blank, and intrusted to the custody of another for use for the benefit of the signer or others, that, as between such party and innocent third parties, the person to whom the document is intrusted is deemed the agent of the party to fill the blanks necessary to perfect the instrument; and this for two sufficient reasons: The application was written by the agent, who was apparently clothed with authority to do all acts needful in the premises. He propounded the questions which he deemed proper, and received and noted the answers thereto. He made no inquiries touching the income of the assured, nor was any statement demanded upon the subject. In all this he acted for the company, and was *pro hac vice* the corporation. His silence as to the question was equivalent to an assertion to the assured that the question was not material, and was waived. Under such circumstances, the signing of the application with the blank unfilled cannot be claimed as an authority to the agent to fill the blank. The rule applies to instruments intrusted to one who represents the signer, and thereby clothed with power to impose upon innocent third parties. But here the instrument was delivered to the agent of the company; and delivery to him, as respects the assured, was delivery to the company. In such case the assured is not estopped to deny the warranty. The company may, in fact, have relied upon the statements filled in the blank by its agent; but that is unavailing, because, to work an estoppel, the misconception as to the state of facts must have been induced, and the company must have been misled, by the words or conduct of the assured. But here the imposition was the act of its own agent, enabled by its authority, and not by the act or conduct of the assured, to work imposition. His acts with respect to the preparation and receipt of the application must be deemed the acts of the company. The principal should, therefore, bear the consequences of the conduct of a negligent or fraudulent agent intervening between the assurer and the assured, the latter being guiltless of fraud or collusion; and this upon the familiar principle that, when one of two innocent persons must suffer by the fraud or negligence or unauthorized act of a third, he who clothed the third with power to deceive or injure must suffer the loss.

Nor do I think the position to be tenable that here was a failure of contract because the minds of the parties had not met, by reason of the alleged fraud perpetrated by Craft. There was a meeting of minds upon a contract of insurance, and a policy issued and accepted. The most that can be asserted is that the minds of the parties did not meet upon one of the inducements to the contract. That was, however, touching a matter which might be waived by the company, and, as to the assured, was waived by the act of its agent.

This opinion has thus far proceeded upon the theory that the question not asked of nor answered by the assured, and answered incorrectly by the agent, was material to the risk, and relied upon by the company, and that the home office was not negligent in the premises. I have preferred to so treat the question for the reason that, upon that postulate, I think, as matter of law, that judgment must go to the plaintiffs upon this verdict. But it may well be doubted whether the question was pertinent in any case except where the assured was under fixed salary. The book of instructions to agents, as well as the printed application, invariably speak of weekly wages or salary, never of income, until the adoption of the rule that weekly indemnity must not be granted for more than two-thirds of the weekly wages or income of the applicant, which, as the secretary states, was adopted since this policy was issued. This lends support to the statement of the agent, Craft, that the question was only applicable to those having fixed wages or salary, and that it was the custom of the company to insure merchants, professional men, and those having no fixed income, without respect to their earnings. This may explain, and in a measure qualify, the seemingly tortuous and unfair action of the agent. If the question and answer were as essential as claimed, it seems singular that diligent officers of the company could have been misled to its prejudice. The alteration was patent upon the face of the paper, and in a handwriting so different from that in which the body of the application was filled that one would suppose the company would have been warned upon bare inspection. The difference was so striking that the attention of the court was attracted thereto at a previous trial of the cause, when no question was suggested, and counsel on neither side supposed that the paper had been tampered with. Unless blinded by overconfidence in its agent, the most casual scrutiny of the paper by an officer vigilant to discharge his duty would have put the company upon inquiry. In such case, when the company ignores patent irregularities, issues the policy, and accepts the premium, it cannot be heard to insist that the wrong of its agent shall be visited upon others. Even holders of negotiable securities taken before maturity, in the usual course of business, are held chargeable with notice when the marks on the instrument are of a character to apprise one to whom the same is offered of the alleged defect. *Goodman* v. *Simonds*, 20 How. 365.

It cannot be said that the assured was a party to the fraud, if fraud there was. Assuming, as found by the jury, that this death was accidental, and that the insurance was otherwise effected in good faith, the

..ere fact of non-disclosure of his financial embarrassments was not wrongful. He was not inquired of upon that subject. Silence under such circumstances is not fraudulent. Most men engaged in large enterprises meet with financial embarrassments, and their incomes are fluctuating. If no false statement is made, inducing insurance which could not otherwise be obtained, there exists no obligation to disclose one's financial condition. If the information be deemed essential, it should be insisted upon, not waived, and the assured should not be persuaded to silence by the active negligence or fraud of the agent of the assurer.

The conclusion to which my mind is impelled is in accord, as I conceive, with the rulings of every court that has spoken to the precise question involved. *Mowry* v. *Rosendale,* 74 N. Y. 360; *Grattan* v. *Insurance Co.,* 80 N. Y. 281; *Donnelly* v. *Insurance Co.,* 70 Iowa, 693, 28 N. W. Rep. 607; *Schwarzbach* v. *Union,* 25 W. Va. 622, 661. There must be judgment for the plaintiffs upon the verdict.