## The Globe & Rutgers Fire Insurance Company *v.* The Indiana Reduction Company.

[No. 9,059. Filed June 27, 1916.]

1. Appeal.—*Briefs.—Waiver of Assigned Errors.*—Such assigned errors as are not mentioned or referred to in the points and authorities in appellants' brief are waived. p. 531.

2. Appeal.—*Review.—Findings.—Sufficiency of Evidence.*—Where there is any evidence fairly tending to support each of the elements necessary to sustain the decision of the trial court, the case will not be reversed for insufficiency of the evidence. p. 534.

3. Insurance.—*Knowledge of General Agent.*—The knowledge of the general agent of an insurance company of facts material to the risk, such as the assured's use of gasoline contrary to the provisions of the policy, will be imputed to the company. p. 538.

4.  INSURANCE.—*Knowledge of Broker.*—The knowledge of an insurance broker relating to the risk, obtained while acting in the scope of his authority as agent of the insurance company, is binding on the company, though not communicated to it.   p. 539.

5.  INSURANCE.—*Knowledge of Insurance Company.—Waiver.—Issuance of Policy.—Existing Breach.*—Where an insurance company at the time it issues a policy of insurance, has actual or constructive knowledge of the use of gasoline on the assured's premises, which is prohibited by the policy, the company, by issuing the policy with such knowledge, thereby waives the prohibitive condition therein, and it cannot afterwards avail itself of such condition in its policy in defense of an action to recover thereon. p. 540.

6.  INSURANCE.—*Issuance of Rider.—Waiver.*—Where, in an action to recover on policies of insurance, the evidence showed that the defendant company, with both actual and constructive notice that the assured, although prohibited by the policies, used gasoline on his premises, placed riders on such policies by which the insurance originally written was redistributed and new property included, such riders constituted a new policy of insurance within the rule that where an insurer issues a policy of insurance with knowledge of the violation of a prohibitive condition contained therein, the same is waived.   p. 541.

7.  INSURANCE.—*Usage of Business Insured.—Presumption.*—An insurance company is charged with the duty of informing itself as to the usages of the particular business insured, and it will be presumed that the company has such knowledge.   p. 542.

8.  INSURANCE.—*Actions.—Sufficiency of Evidence.—Knowledge of Insurer.*—Where, in an action to recover on insurance policies, the defendant interposed the defense that the policies were void because the assured violated a provision contained in the policies forbidding the use of gasoline on his premises, there was sufficient evidence to sustain the finding of the trial court for the plaintiff where it was shown that the insurer had knowledge, both actual and constructive, of the use of gasoline by the assured in his plant, both before and at the time riders redistributing the original insurance and including new property were attached to the policies sued on, the prohibitive clause as to the use of gasoline being, therefore, waived.   p. 543.

From Marion Circuit Court (21,965); *Charles Remster,* Judge.

Action by the Indiana Reduction Company against the Globe & Rutgers Fire Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

VOL. 62—34

*James Bingham, John B. Elam, J. W. Fesler, Harvey J. Elam* and *Remster A. Bingham,* for appellant.

*Leander J. Monks, John F. Robbins, Henry C. Starr* and *James P. Goodrich,* for appellee.

HOTTEL, P. J.—This is an appeal from a judgment in appellees' favor for $4,891.50, in an action brought by it to recover on four insurance policies issued by appellant. These policies, except as to dates and amounts, are identical in their terms. The complaint is in four paragraphs, each of which is based on one of said policies, and such paragraphs are in other respects substantially identical in their averments.

The same defense is interposed to each of these paragraphs of complaint, and consists of an answer in general denial and an affirmative paragraph predicated on a stipulation in the policy which provides that (we quote that part only which has controlling influence on the questions presented by the appeal) the "entire policy unless otherwise provided by agreement hereon or added hereto shall be void * * * if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above described premises * * * gasoline." The part of such answer affecting the question presented by this appeal charges that appellee without appellant's knowledge, consent or permission, kept, used and allowed gasoline on the insured's premises, and thereby voided the policy on which its cause of action is based.

To said affirmative answer appellee filed a reply in general denial and a special reply, which, as affecting the question involved, alleged in substance that at the time the policy sued on was

received by appellee it was engaged in the process of degreasing garbage, and that in such process it was necessarily required to keep and use gasoline on the premises insured, as appellant at all times well knew; that it did so keep and use the same under such policy, with the knowledge and consent of appellant and as a necessary part of said business; that it at no time stored, kept, or used more gasoline on said premises than the needs of its business at such times required; and that the gasoline so kept and used did not in any manner cause or contribute to the fire or loss of appellee complained of, and that none of the same was consumed by said fire.

Six alleged errors are assigned in this court, but only the one challenging the overruling of appellant's motion for new trial is mentioned or referred to in appellant's points and authorities. Such other assigned errors are therefore waived. Rule 22, cl. 5. *Macbeth Evans Glass Co.* v. *Jones* (1911), 176 Ind. 221, 95 N. E. 567; *Bennett* v. *Root Furniture Co.* (1911), 176 Ind. 606, 96 N. E. 708. The first two grounds of appellant's motion for a new trial, respectively, challenge the decision of the trial court as not being sustained by sufficient evidence and as being contrary to law. By these grounds of its motion appellant presents the same question, which is in fact the controlling question in the case, and upon its determination the result of the appeal depends.

To the end that the questions presented and the respective contentions of the parties hereto may be better understood, we preface a statement of such questions and contentions with a statement of the undisputed facts shown by the evidence and the admission of the parties: On and before December

9, 1911, and up to and including May 25, 1912, the Indianapolis Desiccating Company (hereinafter referred to as I. D. Co.), a corporation, owned certain buildings, machinery and personal property connected with and constituting a garbage reduction plant located on leased premises known as the Seller's farm near the city of Indianapolis. During this period four policies of insurance were issued by appellant on said property in favor of said I. D. Co., viz., two policies for $1,000 each for one year, beginning at noon December 9 and 19, 1911, respectively; one for $500 and another for $2,000, beginning at noon, March 14 and May 20, 1912, respectively. These policies were written through George M. Cobb & Company. Later the rider hereinafter referred to was attached to each of said policies, and they, as respectively changed and modified by such rider, are the policies on which appellee's several paragraphs of complaint are respectively based. On May 26, 1912, the I. D. Co. sold, assigned and transferred its plant and the property connected therewith to appellee, the Indiana Reduction Company, hereinafter referred to as the I. R. Co., and on the same day, by written assignment entered on the back of each of said policies, assigned its interest as owner of the property covered by such policies to the I. R. Co., subject to appellant's consent, which assignment was on the same day consented to in writing by appellant, through its said agent, George M. Cobb & Company. Appellee, after purchasing said garbage reduction plant, made additions to and improvements therein, and changed it to what is generally known as a degreasing plant; that is to say, instead of depending on hydraulic pressure alone for taking the oil and grease out of the garbage, they used gasoline as a solvent for such

purpose. After making these changes and improvements in its plant, additional insurance was desired, and obtained with different companies, through the agency of the Security Trust Company of Indianapolis, acting as a broker for that purpose. Through negotiations between such broker and appellant's agent on August 1, 1912, a rider bearing the heading "Indiana Reduction Company" was attached to each of said policies. On August 25, 1912, the property was consumed by fire. In so far as the property covered by the policies sued on are involved the loss was total, and proper proof thereof was made, and was not paid.

As before indicated, for the purposes of the questions presented by this appeal, appellant's sole defense rests on its claim that appellee voided the policy sued on by keeping and using gasoline on the insured premises. Appellee concedes that gasoline was used and stored in a tank on said premises, but insists in effect that the placing of the rider on the policies orginally issued was in effect the making of a new contract of insurance as of that date, and that at that time and before appellant actually and constructively knew that gasoline was being used on said premises, and hence has waived its right to avoid or defend an action on such policies on the ground of a breach of said condition.

It seems to be appellant's contention that the question of the waiver of the provision of the policy prohibiting the use of gasoline on said premises should be determined from conditions as they existed when the insurance was originally issued, and from appellant's knowledge at that time, and that the evidence shows without contradiction that gasoline was not then used on the premises. It is further contended by appellant

that the evidence fails to show that it either actually or constructively knew, at any time before the fire, that gasoline was in fact being kept and used on the insured premises; that the policy expressly prohibits the use or presence of gasoline on the premises without the permit of appellant, and that such permit was not shown, either by the rider or by any other evidence in the case.

In setting out the evidence, pertinent to and affecting said question, it will suffice to set out that most favorable to appellee, because, where there is any evidence fairly tending to support each of the elements necessary to sustain 2. the decision of the trial court, such decision will not be reversed on the ground of the insufficiency of the evidence. *Indiana, etc., Traction Co.* v. *Keiter* (1910), 175 Ind. 268, 92 N. E. 982; *Chicago, etc., R. Co.* v. *Hamerick* (1911), 50 Ind. App. 425, 96 N. E. 649. In addition to the undisputed facts, *supra*, there was evidence affecting said question favorable to appellee in substance as follows:

George M. Cobb testified in substance as follows: I am now, and, when the policies in suit were issued was, president of George M. Cobb & Company, a corporation engaged in the insurance business, and as such issued said policies and signed them "George M. Cobb and Company, General Agents." My company has been appellant's state or general agent at Indianapolis for eleven years, and was also its local agent at said city, and was such general or state agent and local agent when the policies in suit were issued and the rider, headed "Indiana Reduction Company," was attached thereto. All of said riders were signed by "George M. Cobb & Company, Agents," etc. The signature seems to be that of Mr. Holland, an employe of such com-

pany, who had authority to so sign such riders. The stamp appearing at the bottom of each of said riders, containing the words, "This form substituted for all other forms from this date, August 1, 1912", looks like the stamp of our company. The insurance covered by these policies was placed by other agents, who acted as brokers and received part of the premiums. It is customary for the placing agent or broker to prepare the form, and when such form is received by the agent of the insurance company and signed by him he has then "committed his company." The placing agent or broker brings his business in and seldom requests that it be placed with any particular company but intends that we shall write it in some of our companies. Insurance policies are written on the rate that is made up by the "Inspection Bureau." The business of this bureau is that of "furnishing us estimates for which we were paying a subscription * * * estimates of hazards and rates." In fixing the rate this bureau visited and examined the property and the risk. Permission is given to use ten gallons of gasoline without additional charge. Above this amount there is a charge on these estimates. We do not go into that, but if there is gasoline on the premises it is on the estimate card. About two years ago some question came up about appellee's plant using gasoline. Appellant wanted to know the process by which this plant handled its product. There was a squeezing process and a gasoline process, and appellant inquired whether this plant was using the process where they used gasoline, or the other process. Mr. McMurray is connected with the Indianapolis Inpection Bureau. This bureau makes the estimates and publishes them. When it makes the estimates it sends out its men who examine the property for

that purpose. The bureau recommends a rate. The insurance company buys what the bureau delivers to it. The bureau furnishes the subscriber its estimate or rate card.

Jesse T. Moorman testified in substance as follows: Have been president of appellee company since its organization. Our company took over the plant of the I. D. Co., and put in new buildings and machinery and changed the process of treating garbage from the old process of pressing to the degreasing process in which gasoline is used as a solvent, and began to operate under the new process June 14, 1912. Some time in the latter part of June, 1912, and after we changed to the degreasing process, I had two conversations with Mr. Cobb, one of which was over the phone, at a time when he called me up and wanted to place this line of insurance. The second conversation occurred at the Columbia Club, after we began the use of gasoline at the plant, where Mr. Cobb again solicited the line of insurance and suggested that it be placed through the Peoples Loan and Trust Co., of Winchester, Indiana, such trust company thereby getting part of the premium and Mr. Cobb part. I inquired the rate of insurance and he said he did not know just what it would be; that he would not know the rate until the Indianapolis Inspection Bureau fixed it, and when so fixed it would be written by all companies alike. I told him we had changed our process and "was putting in and having a new degreasing—was using gasoline for the extracting of grease in place of the hydraulic presses as had formerly been used by the old company." I also told him that I thought we would let the Security Trust Company place the line of insurance. The conversation was about the insurance, but not about the in-

surance already placed. We then had the policies sued on. They had been assigned to us. I was asking about new policies. We were figuring on increasing our insurance to $50,000. When I told him about our use of gasoline he said that would be a matter for the Indianapolis Inspection Bureau to pass on. I told him that they, Mr. Moore and Mr. McMurray, had already been out and made the inspection, and he said when they fixed the rate he would tell me and let me know. This conversation was before the riders were attached to the policies. The riders were attached to said policies August 1, 1912, and were prepared by Mr. Fitzgerald and Mr. McBride, who came out to the plant and "took their own data." They prepared the form. All I did was to make some changes on their value of the property. Mr. McBride acted as the agent of the Security Trust Company, *which company was not my agent but was the agent of the insurance companies.* We were using gasoline when Mr. McMurray and Mr. Moore were at the plant. Mr. Moore was there when two carloads of gasoline came in. They were there for the "Indianapolis Bureau of Inspection" for the purpose of inspecting and fixing the rate that would be charged for insurance and they then knew we were using gasoline. We were using gasoline when Mr. Fitzgerald and Mr. McBride were there making up this form; I mean the rider, which was attached to these policies, and they then knew we were using gasoline.

Mr. McBride testified in substance as follows: I have charge of the insurance department of the Security Trust Company which, as a broker, placed this line of insurance. I acted for the broker and visited appellee's plant several times and got information for preparing the riders and prepared

them.   I took the forms to Mr. Cobb's office for his signature, one form to be attached to the policy, one for his office and one to be sent to the home office of appellant.   The riders were there signed and approved.   I saw and knew that appellant was using gasoline in its place for degreasing purposes.   I saw two or three carloads of gasoline there.   At the time this rider was attached I talked to Mr. Cobb in regard to writing additional insurance at this plant, and the amount, and the hazard, and the conditions of the plant were discussed in general.   "I told him they were using gasoline there at the present time."   I distributed the insurance of the various companies over the different buildings and put the different provisions in the rider.   My failure to put in the rider a permission to use gasoline was "an oversight."   I saw the gasoline in the tank at the plant.   I received from the Security Trust Company a part of the premiums received from the insurance companies.

It will appear from the above testimony that two witnesses testified positively that appellant's general and local agent, George M. Cobb, was told, before and at the time the riders were attached to the policies in suit, that appellee was using gasoline at its plant.   The knowledge of the general agent of an insurance company of facts material to the risk is the knowledge of the company.   *Indiana Ins. Co.* v. *Hartwell* (1890), 123 Ind. 177, 194, 24 N. E. 100; *West* v. *National Casualty Co.* (1915), 61 Ind. App. 479, 112 N. E. 115, 119, and cases cited.

The undisputed evidence shows that the inspectors of the Indianapolis Bureau of Inspection inspected appellee's plant and knew that gasoline was being used therein when it made the estimates or rates which it fixed for use by the insurance

companies who were its subscribers. Appellant was one of its subscribers. The rate at appellee's plant was increased and there seems to be no question but that such rate or estimate, when fixed by such bureau, was fixed with reference to the use of gasoline at such plant, and that the rate adopted by such bureau was the rate accepted and used by the various insurance companies when said additional insurance was written on such plant and the riders attached to the polices in suit. Furthermore, the insurance broker, the Security Trust Company, according to Mr. Moorman's testimony, *supra*, was appellant's agent. Such trust company through its agent, Mr. McBride, placed the additional insurance and attached the riders to the policies in suit. Mr. McBride expressly states that, when such additional insurance was placed and the riders prepared and attached to the policies, he knew that gasoline was then being used at the plant and that such riders did not contain a permit for such use because of an oversight. The knowledge of the insurance broker relating to the risk, obtained while acting in the scope of 4. its authority as agent of the insurance company, is binding on the company, though not communicated to it. *Western Ins. Co.* v. *Ashby* (1913), 53 Ind. App. 518, 523, 102 N. E. 45; *German Fire Ins. Co.* v. *Greenwald* (1912), 51 Ind. App. 469, 99 N. E. 1011; *Indiana Ins. Co.* v. *Hartwell, supra; West* v. *National Casualty Co., supra.*

It must appear from the evidence above indicated, and the decisions, *supra*, applicable thereto, that there was at least some evidence to warrant the trial court in concluding that appellant, through its duly authorized agents, had actual knowledge of appellee's use of gasoline at its plant before and at the time said riders were attached to the

policies in suit. Where the insurance company, at the time it issues a policy of insurance, knows, or under the law is chargeable with notice of the use of gasoline or any other substance, the use or presence of which on the premises is prohibited by the terms of the policy so issued by it, the company, by accepting and issuing the policy with such knowledge, thereby waives the prohibitive condition in the policy as to the presence or use on the insured premises of such known substances, and can not afterwards, as to the known prohibited substance, avail itself of such condition in its policy in defense of an action to recover on the policy. Upon this subject the Supreme Court in the case of *Ohio Farmers Ins. Co.* v. *Vogel* (1905), 166 Ind. 239, 245, 76 N. E. 977, 3 L. R. A. (N. S.) 966, 117 Am. St. 382, 9 Ann. Cas. 91, said: "Such provisions in insurance policies have been before the courts a great many times, and, so far as we have observed, courts have everywhere, in the absence of fraud, refused to enforce a condition of forfeiture in favor of an insurer who has knowledge of the condition broken when he delivered the policy." See, also, *German-American Ins. Co.* v. *Yeagley* (1904), 163 Ind. 651, 71 N. E. 897, 2 Ann. Cas. 275; *Glens Falls Ins. Co.* v. *Michael* (1906), 167 Ind. 659, 678, 74 N. E. 964, 79 N. E. 905, 8 L. R. A. (N. S.) 708; *Lancaster Silver Plate Co.* v. *National, etc., Ins. Co.* (1895), 170 Pa. 151, 32 Atl. 613, 50 Am. St. 753; 13 Ann. Cas., note and cases cited 541, 542; 2 Ann. Cas. 275, and cases cited pp. 280-283.

From the evidence, *supra*, it will be seen, also, that in addition to the evidence of actual knowledge there was also evidence from which the trial

court might have very properly inferred that appellant should be charged with constructive knowledge of such use of gasoline on the premises by appellee. The riders placed on the policies in suit bore the heading "Indianapolis Reduction Company." By them the insurance originally written was redistributed, and property was included therein which was not covered by the policies as originally written. These riders, therefore, at least for the purpose of the question under consideration, had the effect of making a new contract of insurance. *Corporation, etc.* v. *Paterson, etc., Co.* (1898), 106 Ga. 538, 542, 32 S. E. 650; 7 Am. and Eng. Ency. Law (1st ed.), 1011, 1012; *Liverpool, etc., Ins. Co.* v. *Agricultural, etc., Loan Co.* (1903), 33 Can. S. C. 94. Among the items of property appearing in said rider which were not in the policy as originally written were the following: A "frame gravel roof building with additions and projections known as a *degreasing room*," also, a "*degreasing tank*." Several witnesses who claimed to have knowledge of such matters testified that the word "degreasing" when used in connection with the reduction of garbage signified the process of extracting grease from garbage by the use of gasoline; that the business of *degreasing* garbage could not be successfully conducted without the use of gasoline or naphtha as a solvent, and that for a number of years the principal garbage plants had been operating under the degreasing process by the use of said substances. One or more witnesses testified that the use of gasoline was necessary in such a *degreasing* plant.

The law charges insurance companies with the duty of informing themselves as to the usages of the particular business insured, and a knowledge

542     APPELLATE COURT OF INDIANA,

Globe, etc., Ins. Co. *v.* Indiana Reduction Co.—62 Ind. App. 528.

of such usage on the part of such company will be presumed. *Grant* v. *Lexington, etc., Ins. Co.* 7. (1854), 5 Ind. 23, 61 Am. Dec. 74; *Toledo, etc., Ins. Co.* v. *Speares* (1861), 16 Ind. 54, 55, and cases cited; *Traders' Ins. Co.* v. *Dobbins* (1904), 114 Tenn. 227, 86 S. W. 383; *Bouchard* v. *Dirigo, etc., Ins. Co.* (1915), 113 Me. 17, 24, 92 Atl. 899, L. R. A. 1915D 187, and cases cited; *McClure* v. *Mutual, etc., Ins. Co.* (1913), 242 Pa. 59, 88 Atl. 921, 48 L. R. A. (N. S.) 1221; 12 Cyc 1066, 1067, 1068 and notes; *McKeesport Machine Co.* v. *Ben Franklin Ins. Co.* (1896), 173 Pa. 53, 34 Atl. 16; *W. & A. Pipe Lines* v. *Insurance Co.* (1891), 145 Pa. 346, 22 Atl. 665, 27 Am. St. 703, and cases cited; *City of New York* v. *Hamilton Fire Ins. Co.* (1863), (10 Bosworth), 23 N. Y. Sup. Ct. 537, 551, 553; *Faust* v. *American Fire Ins. Co.* (1895), 91 Wis. 158, 64 N. W. 883, 30 L. R. A. 783, 51 Am. St. 876, 877, and cases cited; *Daniels* v. *Hudson River Fire Ins. Co.* (1853), 12 Cush. (Mass), 416, 59 Am. Dec. 192, 200, 201; 3 Cooley, Briefs on Insurance, 2549; 29 Am. and Eng. Ency. Law 393-396, and notes 1, 2 p. 396. In the case of *Faust* v. *American Fire Ins. Co.*, *supra*, the court said: "Where a contract of insurance, by the written portion, covers property to be used in conducting a particular business, the keeping of an article necessarily used in such business will not avoid the policy, even though expressly prohibited in the printed conditions of the contract." *Davis* v. *Pioneer Furniture Co.* (1899), 102 Wis. 394, 78 N. W. 596. In *Lancaster Silver Plate, etc., Co.* v. *National, etc., Ins. Co.*, *supra*, 163, the court said: "The general rule, deducible from the text books and adjudicated cases, as to such prohibitions, is, that it is the intent of the parties to insure the subject of insurance as it necessarily is and must continue to be during the

life of the policy." We are of the opinion that, under the law as expressed in the authorities cited, *supra*, there was evidence sufficient to warrant the trial court in finding that appellant had knowledge, both actual and constructive, of the use of gasoline by appellee in its plant, both before and at the time said riders were attached to the policies sued on, and hence that the provision of the policy prohibiting such use was waived by appellant.

It is also insisted by appellee that appellant has waived its right to insist upon the defense made by it because of its failure to tender back the premium or any part thereof paid by appellee, but in view of our conclusion, *supra*, we need not further extend this opinion by consideration or determination of such question. As affecting the question, however, we cite the following cases recently decided by the Supreme Court and this court: *Ohio Farmers' Ins. Co.* v. *Williams* (1916), Ind. App.—, 112 N. E. 556; *Aetna Life Ins. Co.* v. *Bockting* (1906), 39 Ind. App. 586, 79 N. E. 524; *Western Ins. Co.* v. *Ashby* (1913), 53 Ind. App. 518, 523, 102 N. E. 45, and cases cited; *Metropolitan Life Ins. Co.* v. *Johnson* (1911), 49 Ind. App. 233, 241, 94 N. E. 785; *United States, etc., Co.* v. *Clark* (1907), 41 Ind. App. 345, 351, 83 N. E. 760, and cases cited; *Glens Falls Ins. Co.* v. *Michael, supra.*

No reversible error is presented by the record. Judgment affirmed.

NOTE.—Reported in 113 N. E. 425. Insurance, waiver of stipulation in policy, constructive notice to company, 107 Am. St. 108; 19 Cyc 807, 809, 817.