**GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, Limited, Plaintiff-Appellant,**

v.

**J. Ray BROWNE and General Casualty Company of America, Defendants-Appellees.**

**No. 11100.**

United States Court of Appeals, Seventh Circuit.

Dec. 15, 1954.

William A. Wick, Indianapolis, Ind., Eli F. Seebirt, South Bend, Ind., Jacob S. White, George C. Forrey III, Indianapolis, Ind., for appellant, White, Raub, Craig & Forrey, Indianapolis, Ind., Seebirt, Oare & Deahl, South Bend, Ind., of counsel.

John T. Hillis, Logansport, Ind., Louis C. Chapleau, South Bend, Ind., Robert C. Hillis, Logansport, Ind., Gallitzen A. Farabaugh, South Bend, Ind., Robert Lusher, Joseph G. Ettl, Farabaugh, Chapleau & Roper, South Bend, Ind., of counsel, for appellees.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiff appeals from a judgment of the District Court entered on October 5, 1953, in an action brought by plaintiff.

Plaintiff's amended complaint for declaratory judgment[1] seeks a judgment declaring that a policy of liability insurance issued by plaintiff to defendant Browne, was void and unenforceable as against plaintiff, or, in the alternative, that if the court should find the policy valid and existing, it should declare that a similar policy, previously issued to Browne by defendant, General Casualty Company of America (sometimes herein referred to as "General Casualty"), was likewise valid and existing and that Browne was co-insured by plaintiff and General Casualty.

Answers were filed by both defendants, Browne asserting that plaintiff had waived its rights and was estopped by its conduct to deny the validity of its policy. Browne in a supplemental counterclaim asks for judgment against either or both plaintiff and General Casualty Company for the costs and expenses of defending certain personal injury actions, to which we shall shortly allude, for costs and expenses of defending the declaratory judgment action of plaintiff and for $24,000 for the use and benefit of Browne or one Chandler, the plaintiff in said personal injury actions, also that Browne be awarded damages against either or both plaintiff and General Casualty for a breach of contract. Both counter defendants answered.

No questions arising upon the pleadings are presented.

---

[1]. Sec. 2201, 28 U.S.C.A.

After a trial, the court declared and adjudged on October 5, 1953, that General Casualty's policy of liability insurance on Browne's automobile had been effectively cancelled and that such cancellation was not voidable; that plaintiff's similar policy was valid and existing and that it was liable thereon (by reason of two judgments recovered by Frederic A. Chandler, against Browne, one as administrator of his wife's estate, in the sum of $10,000, with interest and costs, and one individually, in the same amount, plus $1,000 for medical expenses of Browne, and $4,000 for his attorneys' fees incurred in the defense of the actions culminating in said judgments and in the defense of the case at bar).

There appears to be no dispute in this case as to the evidentiary facts proved on the trial below. We now state them.

In Logansport, Indiana, the R. D. Pierce Agency, Inc., (sometimes herein referred to as "Pierce"), in 1949 represented eight casualty companies among which were the plaintiff and General Casualty, whom Pierce had represented since 1938. This office had 400 to 500 casualty customers. Plaintiff knew that Pierce represented other insurance carriers.

In the Pierce office it was customary to interchange insurance among the companies.

Plaintiff had a written agency agreement with Pierce governing their relationship, among the terms of which was the following:

"Corporation hereby grants authority to Agent in the following territory; viz., Logansport, Cass County, Indiana, and vicinity to solicit and submit applications; to issue and deliver policies, certificates, endorsements, binders, * * * to collect and receipt for premiums * * * to cancel such policies and obligations in the discretion of the agent where cancellation is legally possible * * *."

Plaintiff had notified the Insurance Department of the state of Indiana that Pierce was authorized to act as its agent.

Some time prior to October 3, 1949, General Casualty had issued a policy of liability insurance upon the automobile of Browne. This policy had been negotiated through Pierce as agent of General Casualty, that agency having had Browne as a client since 1943 or 1944, and Browne having requested Pierce to keep him insured against liability for his automobile. The original policy had been renewed by General Casualty through Pierce some time during the fall of 1949, and the renewal policy was delivered to Browne.

On October 3, 1949, General Casualty wrote its agent, Pierce, that it had been informed that its insured, Browne, was associated with a number of personal injury attorneys and was actively soliciting business for them and it therefore requested that Pierce cooperate in returning Browne's policy for cancellation within ten days. The letter further stated:

"We wish to call to your attention that this information is highly confidential and must be treated as such by your agency. We ask that it does not leave your office."

Mr. Schneider of Pierce contacted Browne and advised him that General Casualty desired to pick up his policy and told Browne that he would "try to place the insurance in another company." Browne agreed to surrender the policy, but Schneider did not recall that anything else was said at the time. Browne did not ask why. Later, Browne brought in the policy and left it with one of the girls at Pierce with the comment, "Here's the policy Schneider asked for." On the same day, October 10, 1949, Schneider mailed the policy back to General Casualty for "flat cancellation," according to the cover letter. On October 18, 1949, the central division of General Casualty made a record to the effect that the policy was cancelled flat as of October 19, 1949.

No premium was ever paid for the General Casualty policy.

On October 10, 1949, the same date on which the General Casualty policy

was returned for cancellation, Pierce mailed to plaintiff an application for an automobile liability policy on the automobile of Browne. On plaintiff's application form were a number of blanks calling for the applicant's name, address, occupation, driving experience, and other pertinent data. The last of these blanks was as follows: "No insurer has cancelled any automobile insurance, except * * * ." In this blank was written the following: "No exceptions." The evidence does not reveal exactly who filled in the blanks, but it was someone at Pierce, not Browne.

Upon receipt of the application, plaintiff, on October 11, 1949, wrote Pierce enclosing a questionnaire form to be filled out and did not expect it to be filled out by Browne. This form was subsequently completed by Pierce and returned to plaintiff. Question 8 of the questionnaire inquired: "Any past accidents?" Here the answer had been written: "Collision 1948—unavoidable." Browne had been involved in an accident in 1948 and General Casualty had paid $4,500 in settlement of the claims resulting from that accident. Question 10 inquired the name of former insurance carrier. To this the answer was "General Casualty."

On October 14, 1949, plaintiff mailed to Pierce its policy of liability insurance covering Browne's automobile, with a letter requesting Pierce to send more information about the insured and stating, "We are accepting subject to satisfactory investigation." The policy was delivered to Browne.

Mr. Thompson, the representative of plaintiff in issuing policies, testified that on October 14, 1949, when he ordered the issuance of plaintiff's policy, he knew that the application stated that Browne was a labor union employee, that he had had a collision in 1948 and that General Casualty was the former insurance carrier for Browne.

On October 24, 1949, Browne was involved in a collision near Royal Center, Indiana, which resulted in injuries to a passenger in his automobile and to the occupants of another automobile, namely, Rev. Frederic Chandler and Mrs. Glenna L. Chandler, as well as property damage to the Chandler automobile. Two actions were filed against Browne as a result of this accident, one by Rev. Chandler on his own behalf, and the other by him as administrator of the estate of Mrs. Glenna L. Chandler, deceased. These lawsuits resulted in verdicts and judgments against Browne in the amount of $10,200 as to one, and in the amount of $13,500 as to the other.

On October 28, 1949, the plaintiff filed with the Bureau of Motor Vehicles Form SR21 asserting that the plaintiff insured Browne against public liability and referred to the accident of October 24, 1949. Plaintiff made an investigation of the accident. Browne was then in a hospital, having been seriously injured as a result of the accident, but through his attorneys he offered to cooperate fully with plaintiff.

On November 3, 1949, attorneys for Browne paid to Pierce the premium on plaintiff's policy, which premium Pierce receipted for as follows: "Taken subject to approval by General Accident, Fire and Life Assurance Corporation." On January 18, 1950, plaintiff wrote Browne that the company considered Browne's policy to be void on the ground that declarations in said policy contained misrepresentations material to the risk. The premium on plaintiff's policy was at that time tendered back to Browne, and when refused, it was paid into court.

The statement, "No insurer has cancelled any automobile insurance, except —No exceptions," contained in the memorandum order for insurance with plaintiff was incorporated as item 8 of the declarations in plaintiff's policy, in the following language:

"During the past year no insurer has canceled any automobile insurance issued to the named insured, except as herein stated: *No exceptions* ......................"

■ 1. Plaintiff contends that its policy was not binding upon it because it was issued in reliance upon misrepre-

sentations and concealment of matters material to the risk.

a. The misrepresentations are said to be embodied in the statement that "no insurer has cancelled any automobile insurance,—no exceptions," which was, in substance, the same language later written into plaintiff's policy. The evidence shows that this statement was not false. There is no evidence that any insurer had cancelled any automobile insurance policy issued to Browne. His General Casualty policy was surrendered by Browne. To determine what plaintiff had in mind when it used the language above quoted and especially the language "no insurer has cancelled," a reference to another provision of plaintiff's form of policy is helpful. Condition 22 thereof indicates how plaintiff, as the insurer, might effect a cancellation of its own policy, *i. e.*, by mailing to the insured a written notice, stating when thereafter such cancellation should be effective. A similar method for cancellation by the insurer was provided in condition 22 of the General Casualty policy to Browne. No such notice was mailed by General Casualty to Browne.

Moreover, condition 22 of Browne's policy with General Casualty permitted the *insured* to cancel a policy by surrender thereof. That is what occurred in the case at bar.

We hold that there was no misrepresentation of fact in connection with the answer incorporated in the questionnaire by Pierce or in item 8 of the declarations contained in plaintiff's policy.

b. Plaintiff urges that there was concealment of matters material to the risk. In support of this contention it states that Pierce had a duty to inform plaintiff of the circumstances under which Browne's coverage by General Casualty had been terminated, and especially that General Casualty had suggested the termination. It also charges Pierce with failing to investigate Browne's 1948 accident, an investigation of which would have revealed that General Casualty had paid $4,500 "to settle a claim on this so-called 'unavoidable' accident." It also says that Pierce failed to disclose to plaintiff that Browne was considered an undesirable risk. It claims that here was plainly a breach of good faith and fiduciary duty to plaintiff on the part of Pierce.

■■■ Assuming *arguendo* that the matters claimed to have been concealed from plaintiff by Pierce were material to the risk, we must first define the relationship existing between plaintiff and Pierce. It was that of principal and agent.

But it is urged, and the District Court so held, that Pierce was also the agent of Browne because he had requested it to keep him insured. That Browne had requested Pierce to keep him insured against liability in the operation of his automobile is not in dispute. The determination by the District Court, based upon this evidence, that Pierce was the agent of Browne, was, in our opinion, erroneous. That determination was not a finding of fact. It was a conclusion of law. It is not covered by the following provision of rule 52(a) of the Federal Rules of Civil Procedure:[2] "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Plomb Tool Co. v. Sanger, 9 Cir., 193 F.2d 260, at page 264. In acceding to Browne's request, Pierce was serving the needs of a customer. It was not acting as an agent for the customer. It was acting as agent for plaintiff, the insurer, whose policy it procured for Browne. In looking after Browne's automobile insurance needs, it was serving a customer in the same manner as an automobile service station takes care of the needs of those who come to buy gasoline, oil, tires, etc. Mere attention to the needs of a customer does not make a business man the agent of a customer. The relation between Browne and Pierce lacked nearly

2. Rule 52(a), title 28 U.S.C.A.

all of the following familiar essentials of a real agency; a hiring by the principal, a right to discharge the agent, payment by the principal of compensation to the agent, and supervisory power in the principal over the manner in which the agent performs his duties. Pierce looked exclusively to the insurer for compensation for its services in procuring insurance business for plaintiff. Plaintiff undertook to set forth the correlative rights and duties of itself and Pierce in a comprehensive "Agency Agreement," which is in evidence.

In Commercial Union Assur. Co. v. State, 113 Ind. 331, 15 N.E. 518, at page 520, in speaking of an insurance agent, the court said:

"He was made the agent of the company by written appointment, and as such he acted, so that the natural inference is that the relators did not deal with him as their own agent, but as the agent of the companies which issued the policies of insurance. The mere fact that one of the trustees agreed with Nixon that he should place the insurance did not make him the agent of the board, for the agreement was with him as an insurance agent, and in that representative capacity. Such agreements, courts judicially know, are usually made with insurance agents in their representative capacity, and what the agent does is done as the representative of the company, and not as the agent of the applicant for insurance. The services he performs in connection with the contract of insurance he performs as the agent of the company."

It follows that Browne was not chargeable with any facts merely because they were known to Pierce. Neither was he chargeable with actual knowledge of the information about him which Pierce received from General Casualty. There is no evidence that Browne ever received this information.

On the other hand, Pierce being the agent of plaintiff, whether or not it concealed pertinent information is immaterial. If it did communicate the information, plaintiff cannot complain if it ignored it. If Pierce did not communicate it, plaintiff is estopped to assert that fact as against Browne and General Casualty. The knowledge of Pierce, the agent, was imputable to plaintiff as principal. German Fire Ins. Co. v. Greenwald, 51 Ind.App. 469, 99 N.E. 1011; Indiana Ins. Co. v. Hartwell, 123 Ind. 177, 24 N.E. 100; Globe & Rutgers Fire Ins. Co. v. Indiana Reduction Co., 62 Ind.App. 528, 113 N.E. 425; Western Ins. Co. v. Ashby, 53 Ind.App. 518, 102 N.E. 45, and Sawyer v. Equitable Accident Ins. Co., C.C., 42 F. 30.

Whether plaintiff would be able to prove fraud against Pierce is not involved here, because plaintiff does not pray for any relief against it. In fact, Pierce is not a party to this action.

Pierce did answer correctly all of the factual questions put to it by plaintiff in reference to Browne. It did say that Browne's 1948 accident was unavoidable. This was, of course, an expression of opinion. Plaintiff now points to the fact that $4,500 was paid in settlement of the claims arising from that accident, and contends that this fact shows that the accident was not unavoidable on Browne's part. No such definite conclusion can properly be drawn from these meager facts in regard to that accident. It might have well been that the damages incurred by the claimants were so large that, even though Browne was not to blame for the accident, the risks as to the outcome of the lawsuit, inherent in all such cases, indicated that the payment of $4,500 was an attractive method of disposing of the litigation without a trial.

From all the information elicited by plaintiff, it was in a position to establish whether it wished to insure Browne. Whether any information was given to or withheld from plaintiff by Pierce's action, it was without any collusion with or knowledge of Browne. Pierce, of course, was acting for its own interest and that of General Casualty when it procured a surrender of that company's

policy with Browne. But this was just the sort of situation which plaintiff was bound to know might arise from time to time, inasmuch as Pierce was the representative of various insurance companies and interchange of policies between these companies was common practice in the office of Pierce. The latter's actions in the transactions now under scrutiny were not fraudulent, collusive or improper in a legal sense. Hence, its conduct would not preclude the knowledge of facts which Pierce had from being imputed to plaintiff.

Plaintiff was bound to know that if one of Pierce's customers surrendered a policy written by Pierce, the customer, if he still needed coverage, would likely buy a similar policy in another company. If Pierce wrote the new policy, it so acted as the new insurer's agent in performance of an act of agency entirely distinct from its act of procuring the surrender of the superseded policy.

For these reasons plaintiff is bound by its policy issued to Browne.

2. Plaintiff contends that the General Casualty policy was never effectively cancelled, because, it says, cancellation thereof was conditioned upon procurement of valid substitute insurance coverage, "which was never obtained." Inasmuch as we have held that plaintiff's policy is valid, the premise upon which this contention is based does not exist. The plaintiff's point in this regard is not well taken.

■ Moreover, plaintiff and Browne argue that "the purported cancellation by mutual agreement of the General Casualty policy was voidable for fraud in its inducement." In support thereof they point out that General Casualty's confidential letter to Pierce created in Pierce first, an obligation owing to General Casualty to persuade Browne to surrender his policy, and secondly, to keep confidential the information about Browne. Plaintiff and Browne contend that the concealment from Browne of the confidential information was a violation of Pierce's fiduciary duty to Browne, which they ascribe to a relationship of principal and agent. Inasmuch as we have already held that Pierce was not the agent of Browne in these transactions, it follows that it owed no duty to disclose this information to Browne. They were dealing at arm's length. Browne's surrender of the policy was purely voluntary on his part. Neither he nor plaintiff can now complain of the results of Browne's act.

We therefore conclude that the General Casualty policy was effectively cancelled by its surrender by Browne followed by acceptance by General Casualty.

The judgment and order, from which plaintiff appeals, are

Affirmed.